# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAYOR AND CITY COUNCIL OF
BALTIMORE, et al.,

*Plaintiffs*,

v.

CONSUMER FINANCIAL
PROTECTION BUREAU, et al.,

*Defendants*.

Case No. 25-cv-458-ABA

### DECLARATION OF NGAGNE JAFNAR GUEYE

I, Ngagne Jafnar Gueye hereby state and declare as follows:

1. I am the Chief Financial Officer and Assistant Director for Finance and Procurement at the Consumer Financial Protection Bureau ("Bureau"). I am responsible for providing overall direction and strategic planning for financial management, budget formulation and execution; administrative oversight and accountability for the Bureau's acquisitions, procurement and contracting responsibilities; and directly influencing the vision, strategic direction, financial integrity, and strategic sourcing for the Bureau. I have direct knowledge of the letter sent from Acting Bureau Director Russell T. Vought to The Honorable Jerome H. Powell, Chairman, Board of Governors of the Federal Reserve System, on February 8, 2025. I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

1

**The Bureau's Funding Structure**

2. The Consumer Financial Protection Act ("CFPA") requires the Board of Governors of the Federal Reserve System to transfer each quarter an "amount determined by the Director to be reasonably necessary" for the Bureau to carry out its authorities under law. 12 U.S.C. § 5497(a)(1). In determining this amount, the Director must "take into account such other sums made available to the Bureau from the preceding year" or quarter. *Id.*

3. The Bureau maintains two types of funds: (1) the Bureau of Consumer Financial Protection Fund ("Bureau Fund") and (2) the Civil Penalty Fund. The Federal Reserve funds the Bureau Fund through transfers administered by the Board of Governors of the Federal Reserve System, and this money is used for the Bureau's operations and expenses. Entirely separate from the Bureau Fund, the Civil Penalty Fund is funded by civil penalties imposed and collected by the Bureau—not the Federal Reserve. The Civil Penalty Fund is used to redress harmed consumers.

4. As of January 31, 2025, the sum of the accounts in Bureau Fund showed a balance of $711,586,678.00. This balance reflects both unobligated funds and obligated funds (i.e., pending disbursements for expenses that have already occurred).

5. As of January 31, 2025, the Civil Penalty Fund showed a balance of $464,989,198.

**Change in Bureau Leadership and Acting Director Vought's Letter to Chairman Powell dated February 8, 2025**

6. At the Bureau, new leadership is engaged in ongoing decision-making to assess how to make the Bureau more efficient and accountable, consistent with this

2

Administration's goals of reforming the federal bureaucracy, reducing wasteful spending, and streamlining efficiencies in the federal government.

7. On February 7, 2025, President Trump named Russell Vought as Acting Director of the Bureau.

8. Shortly after becoming Acting Director, Mr. Vought reviewed the sums available to the Bureau in its Bureau and Civil Penalty Funds. Specifically, Mr. Vought received and reviewed a spreadsheet of the Bureau's finances, which showed that as of January 31 2025, the sum of the accounts in Bureau Fund showed a balance of $711,586,678.00, and that as of February 8, 2025, the Bureau Fund had a balance of $412,346,065.32 in unobligated funds. A true and correct copy of that spreadsheet is attached as Exhibit A. Of these unobligated funds, a sum of $220,000,000 was internally earmarked for the operating reserve ("Reserve Fund"). The remaining $192,346,065.32 sum of unobligated funds represented the Bureau's operating balance. The Civil Penalty Fund showed a balance of $427,940,906.24 on February 8.

9. After considering the Bureau's total current balance and the projected expenses for the upcoming quarter, Acting Director Vought determined that these currently available funds were sufficient for the Bureau to carry out its statutory mandates for the next fiscal quarter.

10. In making that determination, Acting Director Vought considered the President's priorities of running a more streamlined and efficient Bureau, the public's interest in a streamlined and efficient bureau, the impact of government spending on the federal deficit, the impact of anticipated efficiency initiatives at the Bureau, and the consumer interest.

11. Based on his determination, Acting Director Vought sent Chairman Powell a letter requesting $0 for the Third Quarter of Fiscal Year 2025. A true and correct copy of that letter is attached as Exhibit B.

12. In the final paragraph of the Letter, Acting Director Vought stated that:

> In the past, the Bureau has at times opted to maintain a "reserve fund" for financial contingencies. But no such fund is required by statute or necessary to fulfill the Bureau's mandate. The Bureau's new leadership will run a substantially more streamlined and efficient bureau, cut this excessive fund, and do its part to reduce the federal deficit.

13. The "reserve fund" that Acting Director Vought references in this paragraph is neither the Civil Penalty Fund, nor the entirety of the Bureau Fund, nor the entirety of the unobligated portion of the Bureau Fund. Rather, the "reserve fund" referenced in this paragraph refers only to the Reserve Fund identified in paragraph 8 (i.e., $220,000,000 in unobligated dollars).

14. The final sentence of Acting Director Vought's Letter includes a directive to new Bureau leadership to run a substantially more streamlined and efficient Bureau consistent with its statutory obligations, and to reduce excess money in the Reserve Fund. That directive aligns with the President's directives and Acting Director Vought's goals. The Bureau is engaged in an ongoing evaluation and assessment to determine the proper amount by which to reduce the Reserve Fund.

15. As a practical matter, reducing the excess in the Reserve Fund means that the Bureau's operating balance increases. In other words, reducing the excess in the Reserve Fund means that more money is available to the Bureau for its operations and that the Bureau needs less money from the Federal Reserve for its operations.

16. The Bureau has made no attempts to transfer any of its Funds back to the Federal Reserve. Indeed, I am not aware of any mechanism for the Bureau to transfer its Funds to the Federal Reserve.

17. Before the Bureau's recent efficiency initiatives under Acting Director Vought, the Bureau's projected expenses for the upcoming Third Quarter were $132,100,000, and $132,000,000 for the Fourth Quarter. In light of the ongoing efforts to increase efficiency and reduce waste, the Bureau's projected expenses will be less than previously projected.

**The Bureau is Committed to Performing its Statutory Obligations**

18. The Bureau is committed to performing its statutory obligations, including those listed in 12 U.S.C. § 5493(b)(3)(A), entitled "Collecting and tracking complaints."

19. The Bureau is maintaining a single, toll-free telephone number, a website, and a consumer complaint database to facilitate the centralized collection of, monitoring of, and response to consumer complaints regarding consumer financial products or services.

20. Additionally, as required by the Home Mortgage Disclosure Act, the Bureau is providing staff and data processing resources to enable the Federal Financial Institutions Examination Council to compile and publish information about applications for mortgage loans that is reported to the Bureau by mortgage lenders. 12 U.S.C. § 2809(a).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 20, 2025

NGAGNE GUEYE
2025.02.20
11:53:28 -05'00'

Ngagne Jafnar Gueye
Chief Financial Officer & Assistant Director
for Finance and Procurement
Consumer Financial Protection Bureau

6

# Exhibit A

| | |
|---|---|
| Operating Reserve* | $ 220,000,000.00 |
| Operating Balance | $ 192,346,065.32 |
| **Bureau Fund** | **$ 412,346,065.32** |
| Civil Penalty Fund | $ 427,940,906.24 |

*CFP FEDERAL STATUS OF FUNDS as of 2/8/2025*

*\*The Operating Reserve totals are earmarked but not segregated in our accounts. They just show as a part of our unobligated balances.*

| | |
|---|---|
| Bureau Fund Treasury | $8,243,219.00 |
| Bureau Fund FRBNY | $305,761.00 |
| Bureau Fund Investments FRBNY | $703,037,698.00 |
| **Bureau Fund Total**** | **$711,586,678.00** |
| Civil Penalty Fund Treasury | $30,357,584.00 |
| Civil Penalty Fund FRBNY | $434,631,614.00 |
| **Civil Penalty Fund Total** | **$464,989,198.00** |

*Cash and Investment Balances as of Jan 2025*

*\*\* Invested balances include pending disbursements as well as unobligated balances. The balance is larger than amounts available for obligation.*

# Exhibit B



1700 G Street NW, Washington, D.C. 20552

February 8, 2025

The Honorable Jerome H. Powell
Chairman, Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, NW
Washington, D.C. 20551

Dear Chairman Powell:

The Consumer Financial Protection Act requires the Board of Governors of the Federal Reserve System to transfer each quarter an "amount determined by the Director to be reasonably necessary" for the Bureau of Consumer Financial Protection to carry out its authorities under law. 12 U.S.C. 5497(a)(1).  In determining this amount, the Director must "take into account such other sums made available to the Bureau from the preceding year" or quarter.  *Id.*

This letter is to inform you that for the Third Quarter of Fiscal Year 2025, the Bureau is requesting $0.

During my review of the Bureau's finances, I have learned that the Bureau has a balance of $711,586,678.00 in the Bureau of Consumer Financial Protection Fund.  By law, I must take account of this sum when determining the amount "reasonably necessary" for the Bureau to fulfill its statutory authorities.  *Id.*  I have determined that no additional funds are necessary to carry out the authorities of the Bureau for Fiscal Year 2025.  The Bureau's current funds are more than sufficient—and are, in fact, excessive—to carry out its authorities in a manner that is consistent with the public interest.

In the past, the Bureau has at times opted to maintain a "reserve fund" for financial contingencies.  But no such fund is required by statute or necessary to fulfill the Bureau's mandate.  The Bureau's new leadership will run a substantially more streamlined and efficient bureau, cut this excessive fund, and do its part to reduce the federal deficit.

Sincerely,

/s/ Russell T. Vought
Russell T. Vought, Acting Director

cc:     Patrick J. McClanahan, Chief Operating Officer, Board of Governors of the Federal Reserve System

consumerfinance.gov