UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,<br><br>Defendants. | Case No. 25-cv-458-MJM |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
NOTICE AND SUPPLEMENTAL DECLARATIONS**

## INTRODUCTION

On February 28, 2025, after this Court's hearing on their motion for a preliminary injunction, Plaintiffs submitted a "Notice of Supplemental Declarations," and attached two witness declarations that were submitted in support of a motion for a preliminary injunction in *National Treasury Employees Union v. Vought*, No. 1:25-cv-00381 (D.D.C.). ECF No. 36. Later that afternoon, the Court issued an order that, among other things, directed Defendants to file any response to Plaintiffs' notice and supplemental declarations no later than March 6, 2025. ECF No. 38. Then, on March 2, 2025, Plaintiffs filed a motion for leave to file yet another supplemental declaration, which this Court granted the next day. ECF Nos. 39, 40. Finally, on March 5, 2025, Plaintiffs filed a motion for leave to file a supplemental exhibit, which this Court granted the next day. ECF Nos. 41, 42.

Plaintiffs' supplemental submissions confirm that their motion for a preliminary injunction should be denied because they demonstrate that Defendants are not preparing to transfer funds outside of CFPB control. Moreover, Plaintiffs' filings confirm that the purported "decision" they challenge is nothing close to an agency action as defined by the Administrative Procedure Act ("APA").

**I.   Plaintiffs' Supplemental Submissions Confirm that Defendants are Not Preparing to Transfer Funds Outside of CFPB Control.**

Plaintiffs filed this action on February 12, 2025, alleging that "[o]n information and belief, Defendant Vought is seeking to transfer the Bureau's reserve fund back to the Federal Reserve." Compl. ¶ 40. *See also id*. ¶ 66 ("Defendants' decision . . . to transfer the Bureau's reserve fund back to the Federal Reserve, is final agency action"). Accordingly, in opposition to Plaintiffs' motion for a preliminary injunction, Defendants submitted a witness declaration from Ngagne Jafnar Gueye, the Consumer Financial Protection Bureau ("CFPB")'s Chief Financial Officer. ECF No. 29-1. Gueye testified that, in fact, "[t]he Bureau has made no attempts to transfer any of its Funds back to the Federal Reserve. Indeed, I am not aware of any mechanism for the Bureau to transfer its Funds to the Federal Reserve." *Id*. ¶ 16.

1

Given that Defendants' evidence addressed the allegations in the Complaint, Plaintiffs' reply in support of their motion for a preliminary injunction moved the goalpost. Trying to salvage this case, they argued that "Defendants never deny they are preparing to transfer funds outside CFPB control or that they have identified the means to do so—including by remitting funds to the Treasury, which Defendants already have the ability to do." ECF No. 30, pp. 6-7. As a threshold matter, Plaintiffs cannot meet their burden to show they are likely to succeed on the merits merely by relying on Defendants' failure to deny an allegation. And as a practical matter, the reason that Gueye's testimony addressed the notion of returning funds to the Federal Reserve was that Plaintiffs alleged in their Complaint that Defendant Vought is seeking to transfer the Bureau's reserve fund back to the Federal Reserve. *See* Compl. ¶¶ 40, 66.

In any event, Plaintiffs' submissions include the very denials that Plaintiffs claimed the record lacked. Specifically, they submitted a witness declaration from CFPB's Chief Operating Officer explaining that, from the agency's perspective, "there indeed is no authority or mechanism to transfer excess funds back to the Federal Reserve, to transfer excess funds to the Federal Reserve's control, or to transfer excess funds to the control of *any other entity*." ECF No. 39-2, Supplemental Declaration of Adam Martinez ("Martinez Decl.") ¶ 6 (emphasis added).

In their memorandum in support of their motion for leave to file a supplemental declaration, Plaintiffs now assert that "Mr. Martinez does not disavow any intention to transfer funds away from the CFPB. Nor does he disavow any personal awareness of a mechanism by which CFPB could transfer funds to any entity other than the Federal Reserve." ECF No. 39-1. Actually, Mr. Martinez testified that "[t]he Bureau *only* transfers funds for the payment of expenditures incurred in the normal course of Bureau activities pursuant to its statutory obligations." ECF No. 39-2, Martinez Decl. ¶ 6 (emphasis added).

Moreover, Plaintiffs' statements reflect a fundamental misunderstanding of the agency's finances. The CFPB is not a bank; it is an administrative agency. It does not hoard its funds in cash in file cabinets at the agency's headquarters. Rather, it has accounts—the Government equivalent of bank accounts—at the Federal Reserve and at the Treasury. As the Consumer

2

Financial Protection Act provides, the amounts transferred from the combined earnings of the Federal Reserve System under 12 U.S.C. § 5497(a) are deposited in a "Bureau Fund" that is "maintained and established at a Federal reserve bank[.]"  12 U.S.C. § 5497(b)(1)-(2).  *See also* Martinez Decl. ¶ 6 ("[P]ursuant to Dodd Frank, the Bureau Fund is a separate fund established in the Federal Reserve, and most of the CFPB funds (both the Bureau Fund and the Civil Penalty Fund) reside at the Federal Reserve.").  While the CFPB's accounts at the Federal Reserve are the agency's equivalent of its "savings" accounts, the agency also has accounts at the Treasury Department, which are the equivalent of "checking" accounts—used when the agency is in the process of making disbursements for its operating expenses.  As Martinez explains, "[r]outinely, the Federal Reserve completes cash disbursements at the CFPB's request to Treasury-held CFPB accounts for CFPB operating expenses."  ECF No. 39-2, Martinez Decl. ¶ 6.

With that context in mind, Plaintiffs' requests for further disavowals make no sense.  The agency cannot plausibly "disavow any intention to transfer funds away from the CFPB."  ECF No. 39-1.  CFPB has no physical funds to transfer away.  Its funds are under CFPB control in accounts at the Federal Reserve and the Treasury.  Martinez Decl. ¶ 6.  And Mr. Martinez has explained that there is "no authority or mechanism" to transfer those "funds to the control of any other entity."  *Id*.  Nor could Mr. Martinez truthfully "disavow any personal awareness of a mechanism by which CFPB could transfer funds to any entity other than the Federal Reserve."  ECF No. 39-1.  That is because, again, the agency "[r]outinely" transfers funds from its accounts at the Federal Reserve "to Treasury-held CFPB accounts for CFPB operating expenses."  Martinez Decl. ¶ 6.  What matters is that there is "no authority or mechanism" to transfer those "funds to the control of any other entity" but CFPB.  *Id*.

## II. Plaintiffs' Supplemental Submissions Confirm that They Are Not Challenging an "Agency Action."

Plaintiffs' supplemental submissions confirm that they are not challenging an "agency action," let alone a "final agency action."  One of the most fundamental principles of administrative law is that agencies act through "agency action[s]," 5 U.S.C. § 704, not disembodied policy

3

decisions. The APA defines "agency action" as including "an agency rule, order, license, sanction, [and] relief[.]" 5 U.S.C. § 551(13). The Act further defines each of these terms. *Id.* §§ 551(4) ("rule"), (6) ("order"), (8) ("license"), (10) ("sanction"), (11) ("relief"). Yet—especially as clarified by Plaintiffs' supplemental materials—the CFPB's purported "decision to defund itself" that Plaintiffs now challenge in their reply, ECF No. 30, p. 4, is none of those things. Indeed, "the [APA] does not provide review for everything done by an agency." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (quoting *Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)). The issue for Plaintiffs is that, even if construed expansively, the APA's definition of "agency action" does not encompass (1) the mental processes or abstract alleged plans of an agency head, (2) discrete statements shared by an agency head with his staff as part of a deliberative process, or (3) other abstract policy decisions divorced from the vehicles through which an agency conveys a substantive decision.

Start with the last of these categories. As the Supreme Court confirmed in *Biden v. Texas*, an "agency action" is the vehicle through which an agency conveys its substantive decision, not an "abstract" policy decision. 597 U.S. 785, 809 (2022). Administrative agencies are judged by courts on whether the particular agency action under review is supported by "reasoned decisionmaking." *Michigan v. EPA,* 576 U.S. 743, 750 (2015) (citation omitted); *see also, e.g., Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009) (Kavanaugh, J.) ("[A]n agency has to justify its rule with a reasoned explanation"); Cristina M. Rodriguez, *Foreword: Regime Change* 135 Harv. L. Rev. 1, 94 (2021) ("Perhaps the most basic of expectations is that actors within the administrative state provide reasons for their actions[.]"). Because a central goal of judicial review under the APA is to determine whether a specific agency action rests on an adequate rationale, challenges to agency action under the APA do not—indeed, could not—

4

separate out for review an agency's disembodied substantive "decision" from the vehicle through which the decision is conveyed and explained. *Biden*, 597 U.S. at 809.[1]

In fact, the opposite is true: APA review necessarily focuses simultaneously on the vehicle in which an agency decision is delivered and the reasoning expressed in that vehicle. *Id*. Particularly for arbitrary-and-capricious review, the soundness of the agency's reasoning is what counts. *See, e.g.*, *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423, 426 (2021) (considering whether "in particular" the agency has "reasonably considered the relevant issues and reasonably explained the decision" and determining that the agency's "analysis" in the agency action "was reasonable and reasonably explained"); *see also Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("judges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it"). And the APA's framers included several means in the statute for individuals to petition an agency and generate a concrete agency action, if one does not exist. *See, e.g.*, 5 U.S.C. §§ 553(e), 554(e); *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 610 (1st Cir. 1989) (en banc) (Breyer, J.) (describing how an individual can generate an agency action by petitioning the agency and submitting to it "all the evidence and legal arguments that he would like to include in the record for judicial review"). "The denial of such a petition 'must be justified

---

[1] In their Reply, Plaintiffs rely on two cases suggesting otherwise that are not binding on this Court. ECF No. 30, pp. 5-6 (citing *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008) and *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015)). *Venetian Casino*'s cursory reasoning does not survive the Supreme Court's reasoning in *Biden v. Texas*. *Compare Venetian Casino*, 530 F.3d at 931, *with Biden*, 597 U.S. at 809. *Venetian Casino*'s reasoning is unpersuasive on its own terms, as the court did not analyze or explain how the "decision of the Commission to adopt a policy of disclosing confidential information"—seemingly disembodied from any vehicle through which the decision is conveyed and explained—is a rule, order, license, sanction, or relief. 5 U.S.C. § 551. Rather, the court focused only on the *Bennett v. Spear* finality prongs. *Venetian Casino*, 530 F.3d at 931 (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (2008)). That was erroneous. *Biden*, 597 U.S. at 809. *R.I.L.-R v. Johnson* principally relies on *Venetian Casino*'s faulty reasoning. 80 F. Supp. 3d at 184.

by a statement of reasons,' which in turn 'can be appealed to the courts' if the litigant has standing to maintain such a suit." *Dep't of Educ. v. Brown*, 600 U.S. 551, 565 (2023) (citation omitted).

No matter how expansively each "agency action" defined in 5 U.S.C. § 551 is construed, these terms do not encompass either the mental processes or abstract plans of an agency head, or statements shared by an agency head with his staff as part of a deliberative process, as Plaintiffs seemingly contemplate. The APA reflects the "general rule that a party is not entitled to probe the deliberations of administrative officials, oversee their relationships with their assistants, or screen the internal documents and communications they utilize. 'Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected.'" *Braniff Airways, Inc. v. Civil Aeronautics Bd.*, 379 F.2d 453, 462 (D.C. Cir. 1967) (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)). An agency head is entitled to decide, in his mind, to pursue a certain policy on Monday and then change his mind on Tuesday. That sequence of events does not generate an "agency action" even if it can be characterized as involving a discrete "decision." Similarly, an agency head is also permitted to—and indeed the law encourages him to—consult with legal, technical, and policy advisors concerning potential policy decisions. Such consultation is not agency action because it does not itself generate a rule, order, license, sanction, or relief. 5 U.S.C. § 551. It is instead the standard process for Executive Branch decision-making. To conclude otherwise would authorize routine oversight of administrative officials' "relationships with their assistants," and "the internal documents and communications they utilize." *Braniff Airways*, 379 F.2d at 462. And it would force administrative officials and their staff "to operate in a fishbowl." *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)). The APA requires no such thing. To the contrary, pre-decisional and deliberative documents are not even part of the administrative record upon which judicial review of final agency action is based. *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).

Here, Plaintiffs show that a CFPB employee saw "an e-mail dated February 11, 2025, in which [CFPB Chief Operating Officer Adam] Martinez stated that Chief Financial Officer Jafnar

6

Gueye was in communications with the Federal Reserve about how to return money to either the Federal Reserve or the Treasury." ECF No. 36-1, Declaration of Blake Doe ¶ 5. And Martinez's testimony confirms that Gueye:

> did receive an inquiry about whether "excess" funds from the Bureau Fund could be transferred back to the Federal Reserve. [Gueye] shared that as far as he was aware, it could not, and that the only mechanism in statute to account for unobligated funds is to offset future requests but, pursuant to that inquiry, he would conduct research, including communicating with the Federal Reserve to determine if there was any authority or mechanism from the Federal Reserve's perspective that he was unaware of. Based on that research, [Gueye] determined that there indeed is no authority or mechanism to transfer excess funds back to the Federal Reserve, to transfer excess funds to the Federal Reserve's control, or to transfer excess funds to the control of any other entity. The agency has therefore not attempted to do so.

ECF No. 39-2, Martinez Decl. ¶ 6. Even assuming that this sequence of events was preceded by some preliminary "decision to transfer away the CFPB's funds," *see* ECF No. 30, p. 5, nothing about this deliberative process—resulting in a determination that such funds could not, in fact, be transferred outside of CFPB control—reflects a rule, order, license, sanction, or relief, within the meaning of the APA. 5 U.S.C. § 551(13). Rather, Plaintiffs' evidence shows nothing more than the normal internal deliberative process by which ideas are tested. It is hardly improper for an agency head to come into office with policy preferences or ideas, discuss them with staff, and then decide that a course of action is not feasible. Plaintiffs have not shown that any step in the CFPB's decision-making process was inappropriate or defective under the APA, including with respect to the issue of transferring funds. And they fail entirely to challenge an agency action, let alone a final agency action.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' opposition, the Court should deny Plaintiffs' motion for a preliminary injunction.

DATED: March 6, 2025                    Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General

7

KELLY O. HAYES
United States Attorney

BRAD P. ROSENBERG
Special Counsel

*/s/ Liam C. Holland*
LIAM C. HOLLAND (*Admitted in New York*)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov

Beatrice C. Thomas (Bar No. 21969)
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
410-209-4848
beatrice.thomas@usdoj.gov

*Counsel for Defendants*